## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA
### (Civil Division)

| | |
|---|---|
| MICHAEL ARNOLD ) | |
| 51 Christopher Way ) | |
| Stafford, VA 22554 ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No.: _____ |
| ) | |
| MERRICK B. GARLAND, ) | |
| ATTORNEY GENERAL, ) | |
| U.S. DEPARTMENT OF JUSTICE, ) | |
| 950 Pennsylvania Avenue, NW ) | |
| Washington, DC 20530-0001 ) | **Jury Demanded** |
| ) | |
|     Defendant. ) | |

## COMPLAINT

Plaintiff, Michael Arnold, by and through undersigned counsel, files suit against the named Defendant for the cause of action stated as follows:

## INTRODUCTION

1.  Plaintiff, Michael Arnold ("Plaintiff" or "Mr. Arnold") brings this civil action pursuant to Section 501 of the Rehabilitation Act, 1973, as amended, 29 U.S.C. §701 *et seq.* for relief from discrimination and hostile work environment based on his disability (mental) and reprisal (Prior EEO activity).

2.  Defendant, Merrick B. Garland ("Defendant" or "Attorney General Garland") discriminated against Plaintiff on the basis of his disability during the course of his employment with the Department of Justice (Federal Bureau of Investigation) ("the Agency").

**JURISDICTION AND VENUE**

3.      This Court has jurisdiction over this Complaint pursuant to Section 501 of the Rehabilitation Act, 1973, as amended, 29 U.S.C. §701 *et seq.*  Further, this Court has jurisdiction over this Complaint because there is diversity of the parties and a question of federal law is presented.  28 U.S.C. §§ 1331 (federal question) and 1332 (diversity).

4.      Venue properly lies within this Court pursuant to 28 U.S.C. § 1391 and 42 U.S.C. § 2000e-5(f)(3).  Attorney General Garland is an officer of the Agency, which is headquartered in the District of Columbia.  Attorney General Garland performs a significant amount of his official duties in the District of Columbia and resides, for the purposes of venue, within the District of Columbia.  *See, e.g., Bartman v. Cheney*, 827 F.Supp. 1 (D.D.C. 1993) (holding that the Secretary of Defense resides in the District of Columbia for the purposes of 28 U.S.C. § 1391).

**<u>PARTIES</u>**

5.      Plaintiff is currently domiciled at 51 Christopher Way, Stafford, VA 22554.  At all relevant times, Plaintiff was an employee of the United States Department of Justice, Federal Bureau of Investigation.  Plaintiff is a resident of Stafford County, Virginia, and a United States Citizen.

6.      Attorney General Garland is being sued in his official capacity as the Attorney General for the United States Department of Justice.

7.      Defendant is subject to suit for the negligent, discriminatory, wanton, willful or wrongful acts and/or omissions of employees or agents of Defendant; in addition, Defendant is the employer of persons who have committed negligent, discriminatory acts

and/or omission against Plaintiff within the course and scope of their employment. Therefore, Defendant is liable pursuant to the doctrine of *Respondeat Superior*.

## EXHAUSTION OF REMEDIES

8. Plaintiff has exhausted all of his administrative remedies.

9. On May 19, 2016, Plaintiff initiated counseling with the Agency's Equal Employment Opportunity office regarding allegations of discrimination and a hostile work environment based on his disability (mental) and reprisal (prior EEO activity).

10. On July 13, 2016, Plaintiff filed a formal complaint of discrimination with the Agency's Equal Employment Opportunity Office alleging discrimination and a hostile work environment based on his disability (mental) and reprisal (prior EEO activity).

11. On September 29, 2016, Plaintiff amended his formal complaint of discrimination and further alleging discrimination and a hostile work environment based on his disability (mental) and reprisal (prior EEO activity).

12. On February 21, 2017, Plaintiff timely filed his hearing request before the Equal Employment Opportunity Commission ("EEOC").

13. On November 16, 17, and 18, 2021, the Equal Employment Opportunity Commission conducted a hearing in Plaintiff's case.

14. On September 30, 2022, the Administrative Judge issued an Order Entering Judgement in Plaintiff's formal complaint of discrimination and found that Plaintiff was discriminated against and subjected to a hostile work environment on the basis of disability and retaliation.

15. On November 9, 2022, the U.S. Department of Justice issued a Final Order electing not to fully implement the EEOC Administrative Judge's Decision.

16. On November 9, 2022, the U.S. Department of Justice filed an Equal Employment Opportunity Commission, Office of Federal Operations ("OFO"), appeal of the September 30, 2022, EEOC Administrative Judge's Decision. Specifically, the Defendant appealed the back-pay award of the Administrative Judge's ruling that Plaintiff be awarded back-pay beyond the GS-9 level.

17. On December 8, 2022, Plaintiff filed an OFO appeal of the September 30, 2022, EEOC Administrative Judge's Decision. Specifically, the Defendant appealed the non-pecuniary compensatory damages award and the failure to award post judgement interest.

18. On April 12, 2023, Plaintiff filed an OFO Appeal regarding the Defendant's failure to comply with its November 9, 2022, Final Order.  Specifically, Plaintiff appealed the Defendant's decision to pay Plaintiff front-pay at the GS-9 level and the Defendant's failure to include agency contributions to health benefits and life insurance premiums, to the retirement system, and the Thrift Savings Plan.

19. On August 7, 2023, Plaintiff filed an OFO Appeal regarding the Defendant's failure to comply with its November 9, 2022, Final Order. Specifically, Plaintiff appealed Defendant's back-pay calculations and the failure to 1) calculate and pay Plaintiff sick leave hours; and 2) calculate and pay Plaintiff overtime hours.

20. The OFO consolidated all appeals, and on February 6, 2024, the OFO issued a decision denying modifying the Defendant's November 9, 2022, Final Order and advised Plaintiff that if he wished to file a United States District Court Complaint, he must do so within ninety (90) days.

21.  Plaintiff now timely files this action pursuant to 29 C.F.R. § 1614.407(a).

## **FACTS**

22. Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

23. During the relevant time period, Plaintiff was a Lead Police Officer, Grade 9.

24. Plaintiff's supervisory chain of command consisted of the following individuals: first-level supervisor, Sergeant Susan Smith; second-level supervisor, Lieutenant Steven Fritz; and third-level supervisor, Captain Kevin Evans.

25. As of 2013, Plaintiff began experiencing severe migraine headaches. Those migraine headaches caused him to suffer head pain, light and noise sensitivity, vision changes, and concentration issues. The severe migraine headaches also caused Plaintiff to experience difficulties eating, as the migraine headaches triggered various stomach issues, including nausea, abdominal pain and upset stomach. When Plaintiff experienced severe migraine headaches, he was unable to get out of bed, walk around, or drive. Plaintiff's migraine headaches also cause depression and anxiety. The onset of this condition occurred while Plaintiff was in high school, but it became increasingly severe between 2013 and 2014.  However, Plaintiff remained fit for duty, even after his migraines worsened. As such, Complainant's severe migraine headaches are considered a condition that substantially limits a major life activity.

26. Since Plaintiff had to utilize sick leave on the days he experienced his severe migraine headaches, the culmination of absences quickly depleted his accumulated leave.

27. When Plaintiff was not absent from work due to his disability, he adequately performed his duties and was rated excellent or outstanding.

28. In 2013, when Plaintiff began experiencing the severe migraine headaches, he made Lieutenant Fritz, Plaintiff's second-level supervisor, aware of the condition and had ongoing discussions about his condition with Lieutenant Fritz throughout the entire relevant period of this dispute.

29. As of September 2014, the Defendant was on notice that Sergeant Smith triggered Plaintiff's migraine headaches, and that as a result, he wished to be moved from under her supervision as a reasonable accommodation.

30. In 2014, as a request for reasonable accommodation, Plaintiff requested from his supervisor, Captain Evans, to go on temporary duty (TDY) to a new Unit referred to as the Bridge as a reasonable accommodation and this request was denied.

31. In 2014, Plaintiff requested to be transferred to the Administrative Unit in FPU as a reasonable accommodation and this request was also denied.

32. In 2014, after Captain Evans offered Plaintiff the evening or night shift as a reasonable accommodation, Plaintiff initially hesitated due to his responsibilities at home. However, Plaintiff eventually communicated to Captain Evans that he would accept the night or evening shift. Nonetheless, Plaintiff was never placed on the night or evening shift and the Defendant did not move forward with processing the transfer.

33. As a request for reasonable accommodation, Complainant requested a demotion in order to be removed from under the supervision of Susan Smith.

34. Again, as a request for reasonable accommodation, Plaintiff requested a detail in order to be removed from under the supervision of Susan Smith.

35. As a result of being denied multiple reasonable accommodation requests, Plaintiff felt that his only option under the circumstances was to take leave under the Family and Medical Leave Act (FMLA).

36. Instead of processing any of Plaintiff's reasonable accommodation requests and engaging in a good-faith interactive process, management encouraged Plaintiff to utilized FMLA leave. Then, after exhausting his FMLA leave, management began the process of terminating Plaintiff for "inability to maintain a regular work schedule due to medical issues."

37. Lieutenant Fritz, although he had knowledge of Plaintiff's severe migraine headaches, did not consider this condition to be a disability. However, Lieutenant Fritz testified that Plaintiff was approved for Family Medical Leave Act (FMLA) leave because of Plaintiff's severe migraine headaches.

38. When Plaintiff did utilize FMLA leave, he was required to visit his physician and obtain a physician's note to submit to his supervisors. Otherwise, Plaintiff would be considered Absent Without Leave (AWOL).

39. Sergeant Smith openly addressed Plaintiff's leave and medical issues with other officers. On one occasion, Plaintiff returned to work from a period of medical leave, his subordinate officer, Lewis Aleman, told Plaintiff that managers had pejoratively and openly discussed Plaintiff's sick leave, as well as his health condition, during roll call. Officer Aleman confronted the managers in question about their behavior, saying something to the effect of, "Arnold has approved FMLA, why do you keep talking about the man? Maybe you shouldn't be talking about his medical stuff." Following

this incident, on February 19, 2016, Plaintiff submitted an email correspondence to Lieutenant Fritz addressing this issue.

40. Later, Sergeant Smith approached Officer Aleman and said, "I think you're the one who has Arnold after me." Then, Plaintiff verbally revisited the issue with Lieutenant Fritz and memorialized the incident with an email dated February 26, 2016 outlining these exchanges.

41. Lieutenant Fritz had to counsel Sergeant Smith regarding openly addressing Plaintiff's leave and medical issues with subordinate officers. HT II, pp. 87-88.

42. From July 2014 until March 2016, Plaintiff advised Captain Evans that Susan Smith was creating a hostile work environment.

43. Repeatedly, management characterized Plaintiff's sick leave associated with his disability as "disruptive." Sergeant Smith testified that Complainant's frequent absences put her in a "bind", and she was "annoyed" when he was absent.

44. In October 2014, Plaintiff filed a report with the FBI Office of Integrity and Compliance (OIC) and the FBI Inspection Division, where he notified the Agency of allegations of harassment and violations regarding Complainant's disability and medical status.

45. On May 9, 2016, Plaintiff contacted the EEO Counselor. However, during the relevant period of this dispute, Plaintiff consistently made management aware that he felt he was being subjected to harassment and retaliation due to his disability; specifically, his utilization of leave caused by his disability.

46. Plaintiff advised Kevin Evans that Susan Smith's behavior towards him at the workplace was triggered and exacerbated his migraine headaches. This behavior

included Sergeant Smith repeatedly referring to Plaintiff's absences in a negative manner, during roll call, omitting Plaintiff from email correspondence, giving Plaintiff an unjustifiably low performance rating, ignoring Plaintiff and refusing to communicate with him in a manner consistent with the way she communicated with his colleagues, and unwarranted and continuous admonishments. On one occasion, Sergeant Smith told Plaintiff he was "trifling for not coming to work," although Plaintiff was absent due to his medical condition.

47. On another occasion, Sergeant Smith subjected Plaintiff to an unwarranted welfare check at his home, after he utilized sick leave. During this welfare check, Sergeant Smith revoked Plaintiff's service weapon, followed him to his bedroom, and laughed about it during the interaction. During this same incident, Sergeant Smith communicated to Plaintiff's mother that she [Sergeant Smith] thought he [Plaintiff] was "just playing" about his conditions.

48. Sergeant Smith testified that she performed the welfare check because of concerning text messages from Plaintiff, sent to Plaintiff's colleague, where Sergeant Smith deduced Plaintiff was upset about his colleague's suicide. Sergeant Smith was unable to testify with any specificity about the statements included in the text messages and why the text messages alarmed her to the point that she had to conduct the welfare check. Sergeant Smith testified that she had never retrieved a weapon from an employee's home and that she was unsure of the proper protocol.

49. On March 25, 2016, Defendant issued Complainant a Notice of Proposed Removal effective on March 25, 2016.

50. After being presented with the Notice of Proposed Removal, Plaintiff reiterated to the relevant management officials that he had pending reasonable accommodation requests, in which the Defendant had not rendered a determination. Plaintiff explicitly inquired why he was being removed from federal service with pending reasonable accommodation requests.

51. The Defendant's failure to accommodate the Plaintiff led to Plaintiff's absences and eventual removal. Initially, the Defendant removed Plaintiff before allowing him the opportunity to respond to the Notice of Proposed Removal.

52. Had Defendant not improperly terminated Plaintiff, Plaintiff would have received a non-competitive promotion to a GS-10, Step 10 effective April 26, 2020.

<u>**CAUSES OF ACTION**</u>

**COUNT ONE**
**Rehabilitation Act of 1973, as amended,**
**29 U.S.C. § 701, *et seq*. and**
**(Discrimination based on Disability)**

53. Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

54. Plaintiff suffers from a disability (severe migraine headaches), and as such, is a member of a protected class.

55. Plaintiff was an individual qualified for the position of Police Officer under 29 C.F.R. §1630.4(a).

56. Defendant was aware Plaintiff suffers from migraine headaches.

57. Plaintiff was able to perform the duties of a Police Officer with or without an accommodation.

58. Plaintiff was subjected to prohibited actions based on his disability to include being

removed from his position as a Police Officer.

59. Plaintiff believes that he was subjected to the adverse employment actions alleged herein based on his disability.

60. By failing to recognize Plaintiff's disability, Defendant acted with malice or with reckless or callous indifference to Plaintiff's complaints.

61. Due to Defendant's actions, Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering, and his injury is permanent in nature.

62. Plaintiff has incurred lost wages, loss of reputation and loss of career opportunities now and into the future, and all of the other losses stated without Plaintiff contributing in any way thereto.

**COUNT TWO**
**Rehabilitation Act of 1973, as amended,**
**29 U.S.C. § 701, *et seq*. and**
**(Discrimination based on Disability – Failure to Accommodate)**

63. Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

64. Plaintiff suffers from a disability (severe migraine headaches), and as such, is a member of a protected class.

65. Plaintiff was an individual qualified for the position of Police Officer under 29 C.F.R. §1630.4(a).

66. Defendant was aware Plaintiff suffers from migraine headaches.

67. Plaintiff was able to perform the duties of a Police Officer with or without an accommodation.

68. Plaintiff requested several reasonable accommodations related to his disability.

69. Defendant failed to provide Plaintiff with a reasonable accommodation.

11

70. Plaintiff was subjected to prohibited actions based on his disability to include being removed from his position as a Police Officer.

71. Plaintiff believes that he was subjected to the adverse employment actions alleged herein based on his disability.

72. By failing to recognize Plaintiff's disability, Defendant acted with malice or with reckless or callous indifference to Plaintiff's complaints.

73. Due to Defendant's actions, Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering, and his injury is permanent in nature.

74. Plaintiff has incurred lost wages, loss of reputation and loss of career opportunities now and into the future, and all of the other losses stated without Plaintiff contributing in any way thereto.

**COUNT THREE**
**Rehabilitation Act of 1973, as amended,**
**29 U.S.C. § 701, *et seq*.**
**(Employment Discrimination on the Basis of Reprisal)**

75. Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

76. Plaintiff engaged in protected EEO activity, and, as such, is a member of a protected class.

77. As an employee of Defendant, subjected to retaliatory treatment as a result of his engagement in protected EEO activity.

78. As an employee of Defendant, Plaintiff was treated differently and subjected to disparate and retaliatory treatment, in comparison to employees with no prior EEO activity, that Defendant employed. Defendant has subjected Plaintiff to adverse

employment actions, including denying Plaintiff a reasonable accommodation, forcing Plaintiff to take leave, removing Plaintiff from his position., and otherwise deprived Plaintiff of his rights as enjoyed by his co-workers with no prior EEO activity.

79. Defendant's unlawful conduct negatively impacted the terms, conditions and privileges of Plaintiff's employment because it resulted in loss of income and benefits and other disadvantages in the workplace.

80. Defendant knew at all times during the events described throughout this Complaint that Plaintiff had engaged in prior EEO activity.

81. Plaintiff has been treated differently and subjected to different terms and conditions of his employment due to reprisal (Prior EEO Activity).

82. Defendant has limited Plaintiff in a way that deprives him of employment opportunities, workplace benefits and otherwise adversely affects his status as an employee because of his prior EEO activity.

83. Defendant's conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of the rights of Plaintiff because of his prior EEO activity.

84. As a direct and proximate cause of Defendant's conduct alleged in this Complaint, Plaintiff suffered from harm, injury, and monetary damages – including but not limited to past and future loss of income, benefits, career opportunities, expenses and costs – and is entitled to all available legal and equitable remedies.

85. Plaintiff was humiliated, embarrassed, and made to endure a great amount of pain and suffering, and his injury is permanent in nature.

86. Plaintiff has incurred lost wages, loss of reputation and loss of career opportunity now and into the future, and all of the other losses stated without Plaintiff contributing in any way thereto.

**COUNT FOUR**
**Rehabilitation Act of 1973, as amended,**
**29 U.S.C. § 701, *et seq*.**
**(Hostile Work Environment)**

87. Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

88. As a result of Plaintiff's protected status, Defendant engaged in a persistent pattern of severe and pervasive harassment as set forth herein, which created a hostile and offensive workplace environment.

89. Defendant's harassment of Plaintiff was due to Plaintiff's Disability (Mental) and Reprisal for his prior protected activity.

90. Defendant's unlawful conduct was unwelcome.

91. Defendant's deliberate conduct of the adverse actions referred to throughout this Complaint created a hostile and abusive work environment and resulted in Plaintiff's unlawful termination.

92. Plaintiff was subjected to harassment because of his protected status, and it unreasonably interfered and affected a term, condition, or privilege of Plaintiff's employment.

93. Defendant knew or should have known of the harassment. Defendant failed to take effective, immediate or remedial action. Despite Plaintiff's complaints, the harassment continued unabated.

94. By failing to take appropriate and effective remedial action against Plaintiff's supervisor, Defendant acted with malice or with reckless or callous indifference to Plaintiff's complaints.

95. As a direct and proximate cause of Defendant's conduct alleged in this Complaint, Plaintiff suffered, and continues for suffer, from harm, injury and monetary damages - including but not limited to past income, benefits, career opportunities, expenses and costs – and is entitled to all available legal and equitable remedies.

96. Plaintiff was humiliated, embarrassed, and made to endure a great amount of pain and suffering, and his injury is permanent in nature.

97. Plaintiff has incurred lost wages, loss of reputation and loss of career opportunity, and all of the other losses stated without Plaintiff contributing in any way thereto.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Honorable Court;

a.  Pay Plaintiff back-pay and front-pay at the GS-10, Step 10 level;

b.  Pay Plaintiff past pecuniary compensatory damages in their proven amount;

c.  Pay Plaintiff future pecuniary and nonpecuniary compensatory damages in a proven amount not to exceed $300,000;

d.  Pay Plaintiff's reasonable attorneys' fees; and

e.  Award such other and further relief as this Honorable Court deems just and proper.

## EQUITABLE RELIEF

98. Plaintiff hereby incorporates by reference hereto, the facts, law, and/or allegations contained within the preceding paragraphs, as fully set forth herein.

99. Because of the actions alleged herein, the continued employment of the supervisors at issue herein without training in equal employment opportunity law, rules and regulations, present a clear and present danger to the employees of Defendant and could result in further illegal actions on the part of Defendant, by and through their respective agents, servants and employees.

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court:

a.  Order Defendant to institute a policy and procedure to be implemented against discrimination;

b.  Equal Employment Opportunity training for Defendant and the supervisory officials at issue herein;

c.  Supervisory training for the supervisors at issue herein; and

d.  Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38, Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

*A. Marques Pitre, Esq.*

_____

A. MARQUES PITRE
(D.C. Bar No. 503119)
Pitre & Associates, LLC
Ronald Reagan Building and
International Trade Center
1300 Pennsylvania Avenue, N.W.,
Suite 700
Washington, DC 20004
Phone: 202-480-8909
Direct: 202-840-6797
Email: ampitre@ampitreassociates.com

*Counsel for Plaintiff*